**E-FILED**
Tuesday, 10 March, 2015 05:34:30 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

CUMULUS RADIO CORPORATION f/k/a CITADEL BROADCASTING CO.,

Plaintiff,

v.

JOSEPH OLSON and ALPHA MEDIA, LLC,
Defendants.

Case No. 15-cv-1067

## O R D E R & O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Dissolve the Temporary Restraining Order. (Doc. 19). The parties have conducted limited discovery on the matter of jurisdiction, and the motion is now fully briefed, and ready for decision. Also pending before the Court are Defendants' Motion to Direct Payment of Bond (Doc. 30), Plaintiff's Motion to Strike Defendants' Supplemental Declarations and Exhibits in Support of Motion to Dismiss (Doc. 51), and Defendants' Motion to Withdraw Declaration of Kathleen Kirby (Doc. 53).

### BACKGROUND

In its Verified Complaint, Plaintiff has alleged that there is complete diversity of citizenship between the parties and that the Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1). (Doc. 1 at ¶ 12). In support of this allegation, Plaintiff, a Nevada corporation with its principal place of business in Georgia, alleged that Defendant Alpha Media, LLC is a Delaware corporation with its

principal place of business in Portland, Oregon. (*Id.* at ¶¶ 9, 11). Although Defendants originally admitted the allegations in paragraphs 11 and 12 of the Verified Complaint, (*see* Doc. 10 at ¶¶ 11, 12), Defendant Alpha Media now argues that it admitted subject-matter jurisdiction in error. (*See* Doc. 20 at 3). Alpha Media asserts that it is a limited liability company ("LLC") with a single member: Alpha Media Holdings, LLC. (*Id.* at 2). It further asserts that a woman who is domiciled in Georgia, Cynthia South, is a member of Alpha Media Holdings, LLC. (*Id.* at 3). If true, this would deprive the Court of subject-matter jurisdiction. Plaintiff admits that Alpha Media is an LLC rather than a corporation, and does not dispute that Cynthia South is a citizen of Georgia. (Doc. 49 at 1-2). However, it disputes the fact that Cynthia South is a member of Alpha Media Holdings, LLC. (*See id.*). If Plaintiff is correct, the Court can conclude that it likely has subject-matter jurisdiction over this matter in spite of improperly-pled facts in Plaintiff's Verified Complaint. For the reasons explained below, the Court concludes that South is not a member of Alpha Media Holdings, LLC, despite certain indications to the contrary. For that reason, Defendants' motion to dismiss (Doc. 19) is denied.

## LEGAL STANDARD

Defendants have moved to dismiss this case pursuant to Rule 12(b)(1), and argue that the Court lacks subject-matter jurisdiction to hear the case. *See* Fed. R. Civ. P. 12(b)(1). Objections based upon the Court's subject-matter jurisdiction cannot be waived, because the Court "has an independent obligation to satisfy itself that federal subject matter jurisdiction exists." *Travelers Property Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) (internal quotation marks omitted). Therefore, if at

any point, the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

This challenge to the Court's subject-matter jurisdiction is a factual challenge, in that the pleadings in the Verified Complaint are formally sufficient to establish diversity jurisdiction, but Defendants have raised a factual challenge to these allegations. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Unlike facial challenges to subject-matter jurisdiction where a court looks only to allegations contained in a complaint, factual challenges allow district courts to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation omitted) (internal quotation marks omitted). This is because courts are "duty-bound" to police the limited boundaries of federal subject-matter jurisdiction, and "demand proof" of the truth of jurisdictional allegations in a complaint. *See id.* (citation omitted).

**DISCUSSION**

Plaintiff has alleged that subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Under § 1332, district courts have original subject-matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). It is long and well- established that the statutory formulation "between . . . citizens of different States" requires "complete diversity between all plaintiffs and all defendants." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). Therefore, in

order for diversity jurisdiction to exist here, there must be diversity in citizenship between Plaintiff and both Defendants. *See id.*

In this case, there are three parties, and each requires a different type of analysis for the purposes of diversity jurisdiction. Plaintiff Cumulus is a Nevada corporation with its principal place of business in Atlanta, Georgia. Therefore, for purposes of § 1332, Plaintiff is a citizen of both Nevada and Georgia. *See* 28 U.S.C. § 1332(c)(1). Defendant Olson is a citizen of Illinois, and resides in Peoria, Illinois. These unchallenged allegations are sufficient to establish that Olson is domiciled in Illinois for purposes of § 1332. *See Lyerla v. Amco Ins. Co.*, 461 F Supp. 2d 834, 836 (S.D. Ill. 2006) ("The citizenship of a natural person for diversity purposes is determined of course by the person's domicile."). Defendant Alpha Media's citizenship poses the problem here. Although Plaintiff's Verified Complaint alleged that Alpha Media is a Delaware corporation with a principal place of business in Portland Oregon – allegations sufficient to establish diversity of citizenship under § 1332(c)(1) – it is now apparent that these allegations are factually untrue. Instead, as Defendants argue and Plaintiff concedes, Alpha Media is a Limited Liability Company registered in Delaware.

Analysis of an LLC's citizenship for purposes of diversity jurisdiction is much different than analysis of a corporation's citizenship. *See Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 347 (7th Cir. 2006). "The citizenship of a limited liability company is that of its members, and its members may include partnerships, corporations, and other entities that have multiple citizenships." *Id.* (citation omitted). When an LLC is made up of other entities that have multiple citizenships,

"[a] federal court . . . needs to know each member's citizenship, and if necessary each member's members' citizenships." *Id.* at 348.

In this case, Defendants assert that Alpha Media LLC is an LLC with a single member: Alpha Media Holdings LLC. Plaintiff concedes that Alpha Media Holdings LLC was Alpha Media LLC's sole member at the time it filed its Verified Complaint. (Doc. 49 at 6). Therefore, Alpha Media LLC's citizenship for diversity purposes must be determined by analyzing the citizenship of Alpha Media Holdings. *See Hickin Eg'g, L.C.*, 439 F.3d at 347-48.

The real issue here is whether Alpha Media Holdings' citizenship destroys complete diversity. Like Alpha Media, Alpha Media Holdings' citizenship is determined by the citizenship of its members. *See id.* Defendants assert that one of Alpha Media Holdings' members – Cynthia South – is a citizen of Georgia. Plaintiff, on the other hand, argues that South is not a member of Alpha Media Holdings.

**I. Extrinsic Evidence of Membership**

Defendants argue that South became a member of Alpha Media Holdings on April 8, 2014 when L& L Broadcast Holdings awarded her Profits Units. (Doc. 20 at 2). L&L Broadcast Holdings subsequently changed its name to Alpha Media Holdings on July 1, 2014. (*See* Decl. of Donna Heffner, Doc. 20-2, at ¶ 4). Defendants suggest that South became a member of Alpha Media Holdings LLC by operation of the Profits Unit Agreement that she signed with L&L Broadcast Holdings. They then point to various ways in which Alpha Media Holdings LLC has behaved in a manner that suggests South is a member. For example, Alpha Media Holdings LLC issued a full set of 2014 Schedule K-1s, which report a Partner's

share of income, deductions, and credits, to South, including a Georgia Schedule K-1 and a Federal Schedule K-1. (Second Supplemental Decl. of Donna Heffner, Doc. 33 at ¶ 3).[1] Alpha Media Broadcast Holdings LLC also filed with the FCC a FCC 323 form, which is an Ownership Report for Commercial Broadcast Stations. Although it did not list South as a member on submissions it made to the FCC on October 1, 2014 or January 26, 2015, (*see* Docs. 49-2, 49-5), it amended its January 26, 2015 filing on March 6, 2015, while this motion was pending. (*See* Docs. 34-45). This amended filing listed South as a member of the LLC. (*See* Doc. 43 at 2).

Plaintiff suggests that Defendants took these actions evidencing South's membership in the LLC for the purpose of destroying diversity after the Verified Complaint was filed. Indeed, other evidence in the record suggests that Alpha Media Holdings LLC did not treat South as a member after she had signed the agreement awarding her Profits Units. For example, L&L Broadcasting created a "Pre-Merger Ownership Summary" in June 2014 – two months after it awarded

---

[1] Plaintiff has objected to much of the evidence that Defendants filed with the Court, including the Second Supplemental Declaration of Alpha Media Holdings LLC's Chief Financial Officer, Donna Heffner. It argues that these filings were late-disclosed, and has requested that the Court either (a) strike the filings and not consider them, or (b) permit it additional discovery and provide an opportunity to file a surrpely. (*See* Doc. 51). Following Plaintiff's objection, Defendants moved to withdraw the Declaration of Kathleen A. Kirby (Doc. 46) and any reference made to Kirby in their reply brief. (Doc. 53). Plaintiff's objection is overruled and its motion is denied, and Defendants' Motion to Withdraw the Declaration of Kathleen Kirby is granted. Here, where the Court has an independent obligation to police the boundaries of subject-matter jurisdiction, it will consider all of the evidence that the parties have brought to its attention. Further, the Court and all parties are pressured by the deadline posed by the pending expiration of the Temporary Restraining Order and the hearing on a preliminary injunction and bench trial currently scheduled for March 13, 2015. At this point, the Court has in front of it sufficient information to decide this challenge to its subject-matter jurisdiction based on the alleged deficiency of diversity due to Ms. South and sees no reason to postpone the proceedings scheduled for March 13.

South unvested Profits Units – that did not identify South as a member. (*See* Doc. 49-10; Alpha 30(b)(6) Dep., Doc. 49-8, at 24-26, 26). Further, an Alpha Media LLC Member List created after July 1, 2014 which lists Alpha Media Holdings' LLC members does not list South as a member. (*See* Doc. 49-11). Alpha Media LLC's designated 30(b)(6) witness explained that the list "does not include the profit units." (Alpha 30(b)(6) Dep., Doc. 49-8, at 31).

**II. The LLC Operating Agreement**

The Court can resolve this issue without reference to the extrinsic evidence provided by the parties and discussed above. This is because Alpha Media Holdings LLC's Operating Agreement is clear as to how holders of Profits Units become Members, and Defendants have admitted that South did not comply with the formalities that the Agreement requires.

The relevant Operating Agreement, the Amended and Restated Limited Liability Company Agreement of L&L Broadcast Holdings LLC dated January 31, 2014 (Doc. 49-1), permits the LLC to issue profits units to officers and employees of the Company "in connection with the performance of services by such officers and/or employees of the Company . . ." (*Id.* at Section 4.03(a)). Profits Units "has the same meaning as the term 'profits interest' defined in Section 2.02 of Revenue Procedure 93-27, 1993-2 CB 343, 1993-2 C.B. 343 (June 9, 1993), which generally defines the term as any interest in an entity treated as a partnership for federal tax purposes other than a capital interest." (*Id.* at 6).

The Operating Agreement evidences an intent to make holders of Profits Units members. It states that "any such Profits Units shall be treated as a

membership interest in the Company for all purposes of the units." (*Id.* at Section 4.03(a)). Moreover, on its first page, the agreement identifies members as individuals "identified on Schedule I hereto," (*id.* at 1), and further provides that "[t]he Company shall update Schedule I to show the names of, and the amount of Profits Units issued to, each holder of a Profits Unit." (*Id.* at Section 4.03(a)). Schedule I is divided into five tranches of membership, the fifth of which is reserved for officers and employees who have been issued Profits Units pursuant to Section 4.03. (*See id.* at 44-45).

However, the Operating Agreement also provides the apparently sole mechanism for how Profits Units holders are joined as Members of the Company. The agreement provides:

> Joinder. As a condition of receiving a grant of a Profits Unit or other membership interest in connection with the performance of services to the Company or a Company subsidiary, the grantee shall be admitted to the Company as a Member upon his execution of a counterpart of this Agreement in accordance with Section 6.04(c). . . .

(*Id.* at Section 4.03(e)).

Section 6.04(c) provides that where profits units are provided to new Members pursuant to Section 4.03, "such issuance and membership shall be effective only after the new Member has executed and delivered to the Company a subscription and assumption determined by the Company." (*Id.* at Section 6.04(c)).

Therefore, the agreement conditions receiving profits units on the fact that a holder will become a Member *once she executes a counterpart to the LLC's Operating Agreement*.

This provision in the Operating Agreement is consistent with the Profits Units Award Agreement that South entered into with the Company on April 8, 2014. (*See* Doc. 20-1 at 2). That agreement provides that, "Employee shall be admitted as a Member of the Company under, and become bound by the terms of, the Operating Agreement upon his or her execution of a counterpart to the Operating Agreement in accordance with Section 6.04(c) thereof." (*Id.* at Section 1.2).

In this case, Defendants have not produced a counterpart of the LLC agreement signed by South. Indeed, their argument seems to be that South is a member in spite of the fact that she has not executed a counterpart to the LLC Operating agreement. (*See* Doc. 20 at 2-3 ("While it does not appear South signed a copy of the LLC Operating Agreement, she is a member of the LLC . . . ")). However, Defendants have not produced any evidence that the LLC waived the condition that new members sign a counterpart of the Operating Agreement, and the Operating Agreement provides that "this Agreement may not be amended or waived except to the extent that such amendment or waiver shall have been approved by affirmative vote of the Members holding a Majority Interest in the Company at the time of such action . . ." (Doc. 49-1 at Section 10.02).

Here, where the LLC Operating Agreement is clear that individuals must sign a counterpart of the Operating Agreement in order to become a member, the

fact that South has not signed a counterpart defeats Defendant's challenge of the Court's subject-matter jurisdiction. Delaware LLCs are governed by the Delaware Limited Liability Company Act, which provides that new members are admitted to LLCs at "[t]he time provided in and upon compliance with the limited liability company agreement or, if the limited liability company agreement does not so provide, when the person's admission is reflected in the records of the limited liability company." [2] Del. Code. Ann. tit. 6, § 18-301(2) (West, WestlawNext through 80 Laws 2015, ch. 3). In this case, it seems that Defendants are trying to prove South's membership by pointing to evidence in Alpha Media Holding LLC's records. That reliance on the default rule provided by Delaware's statute would be appropriate if the LLC's Operating Agreement was silent. *See id.* However, it is not.

The Delaware Limited Liability Company Act is a "flexible" statute. *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 290 (Del. 1999). It is flexible because it "generally permits members to engage in private ordering with substantial freedom of contract to govern their relationship, provided they do not contravene any mandatory provisions of the Act." *Id.* For the most part, the Act only provides default provisions to Operating Agreements when the agreement itself is silent. *Id.* at 291. Put another way, "the parties to an LLC agreement have substantial authority to shape their own affairs and . . .in general, any conflict between the provisions of the Act and an LLC agreement will be resolved in favor of the LLC agreement." *Achaian, Inc. v. Leemon Family LLC*, 25 A.3d 800, 802-03 (Del. Ch. 2011).

---

[2] All agreements under consideration include a choice of law provision identifying Delaware law as operative, and the parties agree that Delaware law applies here.

In their reply brief, Defendants argue that the Court should consider the additional evidence of membership that it has provided, because "LLCs are less formal and more flexible than corporations." (Doc. 50 at 5, *quoting Mickman v. American Intern. Processing, LLC*, No. 3869-VCP, 2009 WL 891807 (Del. Ch. 2009)). Further, Defendants argue that they have substantively demonstrated that South is a member of Alpha Media Holdings LLC and "[s]ubstance is supposed to be paramount over form." (*Id.*at 6 (quoting *In re Grupo Dos Chiles, LLC*, No. Civ. A. 1447-N, 2006 WL 668443, at *2 (Del. Ch. Jan. 30, 2006)).

Indeed, there is case law in which Courts have considered extrinsic evidence in determining whether a person is member of an LLC for the purpose of determining subject-matter jurisdiction. For example, in *611, LLC v. U.S. Lubes*, No. CCB-05-3417, 2006 WL 2038615 (D. Md. July 18, 2006), a district court analyzed Delaware law and an Operating Agreement in order to determine whether two non-diverse companies were members of an LLC. In that case, the parties disputed whether one member was an "Assignee" or a "Substitute Member" under the agreement. *See id.* at *4. The defendants in the case argued that to become a Substitute Member, the company at issue "needed to file (1) a counterpart to the instrument transferring the interest . . . and (2) an Admission Agreement" but had filed neither. *Id.* The Court ultimately found that the disputed member was a member of the LLC for the purposes of diversity jurisdiction, relying upon extrinsic evidence. *See id.* at *4-6. In that case, however, the Operating Agreement included ambiguous language that permitted the judge to look beyond the four corners of the Operating Agreement. Specifically, it included a section that stated the necessary

documents “shall” be filed, but noted that the company “need not recognize any such purported Disposition for any purpose,” in the event that the documents were not filed. *Id.* at *4. In other words, the Operating Agreement at issue provided the parties with flexibility in recognizing membership even in the absence of compliance with the agreement’s formalities. Similarly, in *In re Grupo Dos Chiles, LLC*, a court resolved a dispute over whether a person was a member of an LLC by reviewing the parties’ course of conduct. *See* 2006 WL 668443, at *2-3. This included reviewing extrinsic evidence to a very sparse LLC agreement, including loan documents and letters. *Id.* at *3. In that case, however, the LLC Agreement said nothing at all about how the LLC would admit new members. *See id.* at *1.

Here, however, the Operating Agreement specifically outlines the manner in which Profits Units owners become members, and does not provide for any sort of waiver of formal requirements. (*See* Doc. 49.1 at Sections 4.03, 10.02). Therefore, Defendants’ argument for flexibility and functionality amounts to an argument that the Court should adhere to Delaware’s default rule of looking to an LLC’s records to determine membership rather than adhering to the LLC’s Operating Agreement. Such a suggestion is contrary to established Delaware law. *See Achaian, Inc.*, 25 A.3d at 802-03.

Under Delaware Law, “[i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.” *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). In analyzing a contract, the Court should “stand[] in the shoes of an objectively reasonable third-party observer.” *Dittrick v. Chalfant*, 948

A.2d 400, 406 (Del. Ch.), *aff'd*, 935 A.2d 255 (Del. 2007). The Court has a "straightforward task": if it "finds that the terms and language of the agreement are unmistakably clear, [it] should look only to the words of the contract to determine its meaning . . ." *Id.*

Defendants have urged the Court to not "strain a reading of an Operating Agreement." (Doc. 50 at 6). They suggest that interpreting the Operating Agreement should be left to parties with an interest in the Operating Agreement, including members and the LLC. (*Id.*). Here, however, the Operating Agreement is at issue because it is potentially dispositive of the case. Therefore, the Court has an obligation to interpret its terms. Although the Court agrees with Defendants that the agreement explicitly states that "Profits Units shall be treated as a membership interest in the Company for all purposes of this Agreement," (Doc. 49-1 at Section 4.03(a)), it also unambiguously states that in order to become a Member of the company, a person to whom Profits Units were issued must sign a counterpart of the operating agreement. (*Id.* at Section 4.03(e)). Defendants have offered no other possible readings of this section to the Court, and instead of sought to introduce extrinsic evidence of membership. Where the Operating Agreement is unambiguous, however, and provides clear contractual terms that replace the Delaware Act's default rules, the contract governs and the Court is limited to its four corners. *See Dittrick*, 948 A.2d at 406; *Achaian, Inc.*, 25 A.3d at 802-03.

In this case, the Operating Agreement requires that members admitted pursuant to the issuance of Profits Units sign a counterpart to the Operating Agreement as a condition of membership, and the Court has not been presented

with evidence that South has signed such a counterpart. For that reason, the Court concludes for the purposes of subject-matter jurisdiction that South is not a member of Alpha Media Holdings LLC. Therefore, Defendants have not shown that there is not complete diversity between the parties.

### III. Defective Jurisdiction Allegations in the Complaint

Having resolved the issue of South's membership in the LLC, the Court is left with the issue of whether any other member of Alpha Media Holdings could destroy complete diversity. In order to proceed, the Court "needs to know each member's citizenship, and if necessary each member's members' citizenships." *Hicklin Eng'g, L.C.*, 439 F3d at 348. In this case, of course, the Verified Complaint is defective, as Plaintiff has not properly pled the citizenship of Alpha Media LLC. Therefore, it has not provided any allegations through which the Court can satisfy itself that subject-matter jurisdiction is proper. *See ABN Amro Sage Corp. v. PTI Capital Mgmt., L.C.C.*, No. 02 C 5256, 2003 WL 21995168, at *2-3 (N.D. Ill. Aug. 19, 2003) (granting motion to dismiss without prejudice when plaintiff did not properly plead citizenship in such a way that the court could not establish complete diversity).

However, 28 U.S.C. § 1653 provides that "[d]effective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The Supreme Court explained that § 1653 "address . . . incorrect statements about jurisdiction that actually exists." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). Therefore, § 1653 exists so that federal courts can amend a complaint when subject-matter jurisdiction is improperly pleaded but actually exists. *See id.* at 830-831.

In this case, following discovery, every indication suggests that there are no other non-diverse potential members of Alpha Media Holdings. Yet Alpha Media Holdings has certain members that are business organization, and the parties remain uncertain about the citizenship of those members. On March 6, 2015, Magistrate Judge Hawley ordered that Defendants disclose information regarding the citizenship of other Alpha Media Holdings LLC members by March 11, 2015. Although the Court denies Defendants' Motion to Dismiss, it will expect Plaintiff to satisfy it that subject-matter jurisdiction is proper.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 19) is DENIED. Defendants' Motion for Order to Direct Payment of Bond (Doc. 30) is DENIED as MOOT, as the relief that Defendants seek is dependent upon the Court granting their Motion to Dismiss. Plaintiff's Motion to Strike (Doc. 51) is DENIED and Defendants' Motion to Withdraw Declaration of Kathleen Kirby (Doc. 53) is GRANTED.

Entered this 10th day of March, 2015.

s/Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge